UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY P. SCHAFFNER, | : | Case No. 1:07-cv-567 |
| | : | |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 15-22) (ALJ's decision)).

**I.**

On February 10, 2004, Plaintiff filed an application for DIB and SSI, alleging a disability onset date of June 2, 2000, due to hepatitis C, lumbar disc disease, chronic pain, major depression/bipolar, radiculopathy, impingement of the right shoulder, and degenerative disc disease. (Tr. 15).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of Plaintiff's claims on the state agency level, he requested a hearing *de novo* before an ALJ. A hearing was held on November 30, 2005, at which Plaintiff appeared with counsel and testified. (Tr. 138, 141). A vocational expert, Janet Rogers, was also present and testified. (*Id.*) At a subsequent October 4, 2006 hearing, vocational expert, Kenneth J. Manges, and medical expert, Dr. Hershel Goren, testified. (Tr. 138, 141).

On January 17, 2007, the ALJ issued an unfavorable decision. (Tr. 12-22). That decision became Defendant's final determination upon denial of review by the Appeals Council on June 28, 2007. (Tr. 5-7).

At the time of the ALJ's denial, Plaintiff was a 47 year old male with a ninth grade education. (Tr. 20). Plaintiff's past work experience includes woodwork helper, dry wall installer, and mechanic. (*Id.*)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the nondisabilty requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits at least through June 2006.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's spondylosis of the lumbar spine and right rotator cuff antropathy are considered "severe" (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant's mental impairments cause no limitation in his activities of daily living, and only mild limitation in his social functioning, concentration, persistence, or pace, with 2 episodes of decompensation (20 CFR 404.1520a and 416.920a).

5. The claimant's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

6. The undersigned finds the claimant's allegations regarding his symptoms and limitations not totally credible for the reasons set forth in the body of the decision.

7. The claimant has the residual functional capacity to perform a range of light exertional work, described in detail above.

8. The claimant is unable to perform any of his past relevant work (20 CFR 404.1565 and 416.965).

9. The claimant is a "younger individual" (20 CFR 404.1563 and 416.963).

10. The claimant has a "limited" education (20 CFR 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work (20 CFR 404.1568 and 416.968).

12. Although the claimant's limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include inspector, security guard, and assembler.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-22).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability, SSI or DIB. (Tr. 22).

On appeal, Plaintiff argues that: (1) the ALJ erred by not accepting the RFC opinions of the treating physician; (2) the ALJ erred by not finding Plaintiff entirely credible; (3) the ALJ erred in not considering Plaintiff's mental health issues to be a severe impairment; (4) the ALJ erred in not considering Plaintiff's sit/stand and stand/walk issues; (5) the ALJ erred by not evaluating Plaintiff's use of his hands; and (6) the ALJ erred in not considering the side effects of Plaintiff's medication and whether he could perform work on a sustained basis. Upon careful review, the undersigned finds Plaintiff's first, third and fourth assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon

-4-

which the ALJ could have found Plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For his first assignment of error Plaintiff asserts that the ALJ erred by not accepting the RFC of the treating physician. The undersigned agrees.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.

1984).  Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor.  *Harris*, 756 F.2d at 435 (if not contradicted by substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference).  If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.  20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2).  In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Furthermore, the ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviews the weight the adjudication gave to the treating source's medical

opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9. When an ALJ fails to follow these procedural rules, courts will reverse and remand unless the error is harmless. *Wilson*, 378 F.3d at 547.

Plaintiff's treatment history reveals that he has consistently complained of severe and chronic back pain. (Tr. 21-268, 335-339, 340-356, 380-386, 501-525). These complaints are supported by Plaintiff's medical records and by Dr. Wayman Wallace, who has been Plaintiff's treating physician since 2000. (*Id.*)

Here, the record reflects that:

In September 2000, Plaintiff saw Dr. Wallace with complaints of back pain. (Tr. 221). Dr. Wallace diagnosed Plaintiff with a lumbar sprain. (*Id.*) Plaintiff continued to complain of back pain in October and November 2000. (Tr. 222-223).

In March 2001, Plaintiff went to the emergency room after he fell taking his grandfather out of a tub. (Tr. 248-254). On examination, he had back and left shoulder tenderness and mild pain with range of left shoulder motion. (Tr. 249). Lumbar spine x-rays revealed mild degenerative changes. (Tr. 251).

In March 2002, Plaintiff returned to Dr. Wallace because of back pain. (Tr. 224). Later in March 2002, Plaintiff complained of severe left-sided back pain after a fall. (Tr. 225).

In May 2003, Plaintiff returned to Dr. Wallace and complained of a "very sore" back. (Tr. 231). Lumbosocral and thoracic spine x-rays revealed mild osteoarthritis. (Tr. 259, 271).

In August 2003, Plaintiff told Dr. Wallace that his pain medications were not working. (Tr. 232). Plaintiff underwent a lumbar spine MRI scan, which revealed broad bulging mid-and lower lumbar discs. (Tr. 262, 274).

In January 2004, Plaintiff saw Carl M. Shapiro, D.O., with complaints of low back pain. (Tr. 307-309). Plaintiff had positive straight leg raise on the left but negative Patrick's maneuver and negative femoral nerve stretch test. (Tr. 308). Plaintiff's MRI scan revealed mild-to-moderate foraminal stenosis. (*Id*.) Dr. Shapiro opined that Plaintiff had "fairly advanced degenerative spondylosis." (*Id*.) Dr. Shapiro felt that Plaintiff would benefit from a series of epidurals "to quiet down" the inflammation, to be followed by "an aggressive course of physical therapy." (*Id*.) In January through March 2004, Plaintiff underwent a series of steroid injections for spinal stenosis. (Tr. 315-318).

In April 2004, Plaintiff returned to Dr. Shapiro and reported that the epidural steroid injections only gave him four or five days of relief. (Tr. 311). Dr. Shapiro recommended physical therapy. (Tr. 311).

In May 2004, Plaintiff complained of back pain and Dr. Shapiro prescribed Oxycotin. (Tr. 312). In June 2004, Plaintiff returned to Dr. Shapiro with complaints of back pain. (Tr. 360).

In July 2004, Dr. Wallace completed an RFC assessing Plaintiff's ability to work. (Tr. 336-339). Dr. Wallace opined that Plaintiff could lift and carry less than five pounds occasionally, stand and walk for one-half hour at a time, for a total of two-to-three hours a day, and sit for one to two hours without interruption for a total of five hours a day. (Tr.

336-337). Plaintiff could never stoop, crouch, kneel, or crawl, and only occasionally climb or balance. (Tr. 337-338). Additionally, Dr. Wallace found that Plaintiff should avoid heights, moving machinery and vibration. (Tr. 338). Dr. Wallace concluded that Plaintiff was incapable of even low stress jobs due to back pain and fatigue. (Tr. 383-384).

In August 2004, Plaintiff saw Dr. Lester Duplechan with complaints of right low back pain. (Tr. 367-375). Dr. Duplechan reviewed Plaintiff's MRI which revealed mild degenerative disc disease and facet joint hypertrophy with mild foraminal narrowing at the L-5 levels bilaterally and no central stenosis. (Tr. 368). Dr. Duplechan noted that Plaintiff's June 2004 EMG was suggestive of a right L-5 radiculopathy. (Tr. 368). Dr. Duplechan was uncertain if the facet joints were the cause of his pain and prescribed a diagnostic injection. (Tr. 369).

In August 2005, Dr. Wallace completed another RFC assessing Plaintiff's ability to work. (Tr. 382-386). Dr. Wallace opined that Plaintiff was unable to tolerate even low-stress work due to his level of pain. (Tr. 383). Plaintiff could sit for 20 minutes at a time for a total of six hours a day and stand for 15 minutes at a time, about every 45 minutes, but less than two hours a day. (Tr. 384). Additionally, Dr. Wallace found that Plaintiff needed to use a cane while walking or standing and could lift and carry no more than ten pounds. (Tr. 385).

On November 30, 2005, at the first hearing before the ALJ, Plaintiff testified that he had been walking with a cane for a little over a year. (Tr. 36). Plaintiff noted that he could only walk a half of a block to a block and had to stop. (*Id*.) He also testified that sitting was very uncomfortable, and it was noted in the record that Plaintiff was sitting toward the right, rather than straight in his chair. (Tr. 37). Plaintiff also stated that he had problems walking and that he had shooting pain from his lower back all the way to his mid-back. (Tr. 37-38).

At the October 4, 2006 hearing before the ALJ, Plaintiff testified that he uses his cane because he has problems getting up and keeping his balance. (Tr. 67). He also testified that he falls at least four to five times a week and can only walk about half a block and then has to sit down. (*Id*.) Additionally, Plaintiff stated that when he is sitting he has to constantly move around because of the pain and can only sit in one position for five minutes. (Tr. 67-68).

In February 2006, Plaintiff saw Dr. Scott Long, at the request of the state agency. (Tr. 461-472). Plaintiff reported that he fell daily when using stairs or walking on uneven surfaces. (Tr. 461). Dr. Long noted that Plaintiff used a four-prong cane and walked with a wide-based and slow gait. (Tr. 461). Additionally, Dr. Long found x-ray evidence of bilateral spondylolysis of L-5 and mild anterior spurring. (Tr. 463-464). Accordingly, Dr. Long determined that Plaintiff could occasionally (as opposed to constantly) crouch, crawl, stoop and reach with his right arm. (Tr. 471).

Despite the copious medical records, the ALJ broadly rejected the opinions of Plaintiff's treating physicians, Dr. Wallace and Dr. Shapiro, finding that their opinions were not supported by the objective medical evidence. (Tr. 19). Instead, the ALJ placed great weight on the opinion of a consulting physician, Dr. Long, despite the fact that Dr. Wallace and Dr. Shapiro's opinions spanned a greater length of time and were based on first hand knowledge of the Plaintiff and objective medical findings. Moreover, the ALJ's claim that the treating physician's opinions were not supported by the objective evidence is clearly rebutted by Plaintiff's MRI findings, EMG findings, positive straight leg raise test, and complaints of pain with decreased range of motion. (Tr. 218-541). Additionally, Janet Rogers, the vocational expert, testified that based on the opinions set forth in Dr. Wallace's RFC, Plaintiff would be incapable of sustaining employment. (Tr. 103).

In sum, the Court does not dispute that it is the ALJ's prerogative to resolve conflicts in the medical evidence. However, when that conflict involves the opinions of treating physicians, consultative examiners and/or non-examining state agency physicians, the ALJ may not ignore the law requiring special deference to the opinions of treating physicians when resolving the conflict.

> "The treating physician doctrine is based on the assumption
> that a medical professional who has dealt with a claimant and
> his maladies over a long period of time will have a deeper
> insight into the medical condition of the claimant that will a
> person who had examined a claimant but once, or who has
> only seen the claimant's medical records."

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, it is evident that the ALJ improperly afforded significant weight to the consulting physician, Dr. Long, and afforded insufficient weight to the treating physisians. This constitutes clear error by the ALJ. Accordingly, upon careful review of evidence, the undersigned finds that the ALJ's decision is not supported by substantial evidence.

**B.**

For his third assignment of error Plaintiff claims that the ALJ erred when he failed to consider Plaintiff's mental health issues to be a severe impairment. Specifically, the ALJ found that there was no evidence that Plaintiff was currently undergoing psychiatric care, and, based largely on that fact, concluded that Plaintiff's mental impairments caused no limitations in his social functioning, concentration, persistence or pace. (Tr. 18). However, the fact that a plaintiff may have had symptom free periods of time does not prove his ability to work on a sustained basis. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (given the unpredictable course of mental illness, "symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse").

Here, the record reflects that:

On November 2, 2005, Plaintiff was admitted to the Clermont Counseling Center ("CCC"). (Tr. 475). At the time of his admission Plaintiff was diagnosed with bipolar II disorder, marijuana dependence, and borderline personality disorder, with a Global

-12-

Assessment of Functioning (GAF) of 45.[2] (Tr. 475).  Plaintiff lost 20 pounds in two months and was hospitalized at Clermont Mercy Hospital twice in five months for severe suicidal ideation with a plan.  (*Id*.)  After Plaintiff's release from the CCC, Plaintiff continued to attend counseling sessions through May 2006.  (Tr. 475-500).  Plaintiff also continued to see B. Loring, M.S., at the CCC for medication refills.  (Tr. 476, 494-495).

At the first hearing before the ALJ on November 30, 2005, Plaintiff testified that he often breaks down and crys because he cannot work to support his family and feels worthless.  (Tr. 39).

In late December 2005, Plaintiff went to the emergency room and reported that he had not slept in two or three days.  (Tr. 451).  Plaintiff reported a history of bipolar disorder and that he was behaving in a "violent" manner.  (*Id*.)  The physician Plaintiff saw in the hospital, Dr. Vivian, felt that Plaintiff's problems were a result of taking Lexapro and changed his medications.  (Tr. 449).

Plaintiff was hospitalized again from May 1 through May 4, 2006, for suicidal ideation with a plan to jump off a bridge.  (Tr. 527-530).  Plaintiff went to the emergency room at the request of Dr. Loring as a result of reporting suicidal ideation.  (Tr. 522).  Plaintiff had recently been separated from his wife and was due to appear in court.  (*Id*.)  Dr. Lydia R. Schoolfield treated Plaintiff with Cymbalta with resolution of suicidal

---

[2] A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., sucicidal ideation...) or any serious impairment in social, occupational, or school functioning (e.g., ... unable to keep a job)."  American Psychiatric Assoc., Diagnostic & Statistical Manual of Mental Disorders at 34 (Text Rev. 4th ed. 2000).

ideation.  (*Id*.)

At the October 4, 2006 hearing, Plaintiff testified that his depression and bipolar disorder cause him to feel worthless and that he has bad mood swings that cause him to shut himself in his home.  (Tr. 69).  Plaintiff also testified that as a result of his depression he stays up for days at a time and that these symptoms have been going on for a couple of years with the symptoms increasing in the past year. (Tr. 71).

In support of the ALJ's decision that Plaintiff's mental impairments were not severe, the ALJ cited the medical opinion of Dr. Goren, which supported the ALJ's finding.  (Tr. 18).  However, Dr. Goren is not a board-certified psychiatrist, and most notably, his opinions were based *solely* on Plaintiff's medical records.  (Tr. 77-83).  Dr. Goren never actually examined Plaintiff.  (*Id*.)

The ALJ's failure to properly consider Plaintiff's mental health issues was clear error.  Accordingly, upon careful review, the undersigned finds that the ALJ's nondisability finding is not supported by substantial evidence.

## C.

In his fourth assignment of error, Plaintiff claims that the ALJ erred in not considering Plaintiff's sit/stand and stand/walk limitations.  The undersigned agrees.

SSR ruling 96-9P indicates that the full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. In his RFC, Dr. Wallace, Plaintiff's treating physician, indicated that Plaintiff would need a job with alternating sit/stand options and, in fact, would only be able to stand/walk less than 2 hours in an 8-hour day. (Tr. 384). Despite Dr. Wallace's RFC, the ALJ found that "[t]he claimant has no restrictions on standing, walking, sitting, or balancing." (Tr. 18).

Based on the objective evidence as discussed in detail in Section II.A, and the RFC of Plaintiff's treating physician, the ALJ's failure to restrict Plaintiff's standing, walking and sitting in any manner was clear error. The ALJ's assessment was based on the opinion offered by a *consulting* orthopedic specialist, Dr. Long, rather than Plaintiff's treating physician. Such a finding of nondisability is not supported by substantial evidence.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's credible assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's treating physicians Drs. Wallace and Shapiro, proof of disability is overwhelming. In view of the opinions of Plaintiff's treating physicians, Dr. Wallace's RFC assessment, and Plaintiff's assertions of disabling conditions, there exists substantial evidence of Plaintiff's disability and the opposing evidence is lacking in substance.

## IV.

Based upon the foregoing, the undersigned concludes that reversal and remand for an award of benefits is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability, disability insurance benefits and supplemental security income benefits beginning on June 2, 2000, should be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter should be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date:  <u>August 15, 2008</u>                                     <u>s/ Timothy S. Black          </u>
                                                                   Timothy S. Black
                                                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY P. SCHAFFNER, : | Case No. 1:07-cv-567 |
| : | |
| Plaintiff, : | Judge Sandra S. Beckwith |
| : | Magistrate Judge Timothy S. Black |
| vs. : | |
| : | |
| COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).